# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 19, 2013

## WILLIAM DARRYN BUSBY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lewis County**
**No. 6650    R.E. Lee, Judge**

---

**No. M2012-00709-CCA-R3-PC    Filed October 30, 2013**

---

The Petitioner, William Darryn Busby, appeals the Lewis County Circuit Court's denial of post-conviction relief from his convictions for four counts of rape of a child. In this appeal, the Petitioner argues that he was denied a full and fair hearing by the post-conviction court, that he received ineffective assistance from both trial and appellate counsel, and that the cumulative effect of these errors deprived him of a defense at trial and meaningful appeal. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined. JEFFREY S. BIVINS, J., not participating.

John P. Cauley, Franklin, Tennessee (Post-Conviction); Hershell D. Koger, Pulaski, Tennessee (on appeal); for the Defendant-Appellant, William Darryn Busby.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel, Assistant Attorney General; Kim R. Helper, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The facts of this case as summarized by this Court on direct appeal are as follows:

> The victim in this case, C.T.,[1] was ten years old at the time he testified. He explained that, during the times in question, he was living with his mother, his

---

[1] It is the policy of this Court to identify the minor victims of sex offenses by their initials.

baby brother, and the Defendant. The Defendant was his mother's boyfriend.

The victim testified that the first time the Defendant touched him in a "bad" way, he came out of his bedroom in the morning and found the Defendant in the room next door, on the computer. The Defendant showed the victim some pictures of naked women on the computer. The Defendant then asked the victim if he "wanted to know how sex was"; the victim replied, "no." The Defendant pushed the victim into the victim's bedroom, laid him on the bed, pulled the victim's underwear down, and licked the victim's penis. The victim stated that he tried to pull his underwear up, but the Defendant held them down. The Defendant told C.T. that if he told anyone, the Defendant would beat him. The victim testified that his mother was asleep during this incident.

C.T. testified that the Defendant had sexual contact with him a second time, stating "he put my thing in his mouth, I think that's what happened the second time." The victim stated a short time later, "he might've made me put my mouth on his ... I'm not that sure." The victim said that the Defendant accomplished this by forcing him "with words."

On a third occasion, C.T. and the Defendant were watching a movie together on the couch in the living room. The victim stated, "He told me to put my mouth on his thing and he pushed my head down like that right there." The victim testified that "he made me put my mouth on his thing again until that stuff came out, and then when it came out, I spit it in the floor and then he told me, 'When you get out of the bathroom spitting it in the commode, to clean it up off the floor.' " C.T. said he thought the color of the "stuff" was white.

On another occasion, the victim testified, the Defendant was yelling at someone on the cellphone and the victim woke up. The Defendant then got off the cell phone and again made C.T. put his mouth on the Defendant's penis. The victim thought this incident occurred in the living room.

On a fifth occasion, the victim testified, the Defendant had some clear lotion in a tube with a screw-on top. The Defendant squirted some of this lotion "up" the victim's "bottom" and "put his thing in [the victim's] bottom for about five minutes." This occurred while the victim was bent over his mother's bed with the Defendant standing behind him. After the Defendant put his penis in the victim, the Defendant "moved back and forth." The victim's mother was at work at the time. Afterward, the victim testified, he "had to go clean the lotion of [sic] my bottom and [he] had to use the bathroom."

The victim did not tell anyone about these incidents until after his mother and the Defendant had a big fight. He told his mother then "[b]ecause [he] knew [the Defendant] was gone." The victim had not told his mother before because the Defendant had threatened to beat him.

C.T. stated that he was in the second grade when these incidents occurred.

[The victim's mother] testified that the Defendant moved in with her and C.T. in April of 2001 while she was pregnant. The Defendant left the residence in July 2002. [The victim's mother] stated that the Defendant was home alone with C.T. on Sundays while she worked. She told the Defendant to leave after they had a fight and he "slung" her and cussed her in front of C.T. The next day, she testified, C.T. told her what the Defendant had done to him.

[The victim's mother] stated that during a phone call she subsequently had with the Defendant, he admitted to C.T.'s allegations. On a later date, [the victim's mother] again called the Defendant and recorded the phone call. In spite of her efforts, the Defendant did not confess to the alleged crimes during this phone call.

[The victim's mother] acknowledged that C.T. had been assessed by school personnel as being emotionally disturbed. She also explained that C .T. was repeating the second grade when the Defendant's crimes were allegedly committed.

Julie Elizabeth Rosof-Williams testified that she is a nurse practitioner with Our Kids, an outpatient clinic affiliated with Metro General Hospital in Nashville. She examined C.T. following his allegations. During the victim's visit, he stated that his mouth and bottom should be examined for germs. Ms. Rosof-Williams examined C.T.'s genital area, his penis and his "bottom," and determined that they were all "normal." On direct exam, she stated that "[i]t is entirely possible that this child has been anally penetrated, orally penetrated, without any sort of medical evidence, so this exam is consistent with the history of penetration ." On cross-examination, she admitted that, "[b]ased on the physical exam findings alone, I cannot tell you whether this child has been sexually abused or not."

. . . .

The Defendant testified and steadfastly denied the allegations levied against him by C.T. He also denied having "slung" [the victim's mother]. He denied that he had ever admitted to [the victim's mother] that he molested C.T. During cross-examination, he admitted to having some pornographic photographs on his computer at home.

State v. William Darryn Busby, No. M2004-00925-CCA-R3CD, 2005 WL 711904, at *1-4 (Tenn. Crim. App. Mar. 29, 2005), perm. app. denied (Tenn. Aug. 25, 2008).

On direct appeal, the Petitioner raised a single issue and argued "that the trial court committed reversible error by failing to instruct the jury about the State's election of offenses and by failing to provide the jury with an appropriate unanimity instruction." William Darryn Busby, 2005 WL 71194, at * 4. After an extensive discussion, we concluded that the trial erred when it failed to instruct the jury about the State's election of offenses and its own dismissal of Count 2 of the indictment. Because the prosecutor during closing argument provided an effective substitute for the missing instruction we concluded that the error was harmless. Id. at *5. The Petitioner did not file an application for permission to appeal to the Tennessee Supreme Court.

A full recitation of the procedural history since the Petitioner's direct appeal is necessary to place the issues raised herein in context. On December 15, 2005, the Petitioner filed a pro se petition for post-conviction relief and subsequently filed two pro se amendments to that petition. In his petitions, the Petitioner alleged, among other things, ineffective assistance of trial and appellate counsel, and sought a delayed appeal. The trial court appointed counsel on January 4, 2006, and post-conviction hearings were held on May 31, 2007, and October 24, 2007. The post-conviction court granted the Petitioner a delayed appeal and stayed the post-conviction proceedings pending the final disposition of the delayed appeal. The Tennessee Supreme Court denied the Petitioner's application for permission to appeal on August 25, 2008. On December 1, 2008, the post-conviction court entered its memorandum opinion denying the remainder of the Petitioner's claims. The judge who presided over each of the Petitioner's above post-conviction matters, the Honorable Robert E. Lee, is the same judge who denied the Petitioner relief in the instant appeal.

The Petitioner filed a timely notice of appeal, and on January 26, 2010, the Petitioner's post-conviction counsel filed a brief in this Court. On April 5, 2010, the Petitioner filed a pro se motion seeking the withdrawal of his post-conviction counsel due to a conflict of interest because the Petitioner was represented by the same attorney in the delayed appeal and the subsequent post-conviction proceeding. On May 12, 2010, this Court remanded the case to the post-conviction court for a new evidentiary hearing to determine

whether the Petitioner waived the apparent conflict and stayed the appeal pending the conclusion of the case on remand. Based on the Tennessee Supreme Court decision in Frazier v. State, 303 S.W.3d 674 (Tenn. 2010), this Court ordered that, should the Petitioner not waive the conflict, the trial court should permit the Petitioner to submit any amendments to the petition and should consider all potential grounds for relief.[2] An evidentiary hearing was held on August 9, 2010, where it was determined that the Petitioner did not waive the apparent conflict of interests and that he wished to proceed pro se. The trial court appointed elbow counsel to the Petitioner and allowed him to proceed pro se.

Following the order from this Court, the Petitioner filed his third amended pro se petition for post-conviction relief. A three-day post-conviction hearing was conducted, during which the following witnesses testified: the Petitioner's trial and appellate counsel; Mike Moon of the Department of Children's Services; Officer John Smith of the Lewis County Sheriff's Department; Larry Webb, a local barbershop owner; Tom Isabelle, the defense investigator from the Petitioner's trial; the mother of the victim; and several jurors from his original trial.

Trial counsel testified that he attempted to present a number of defense theories to the jury. When questioned further, he explained that his main theories were "it didn't happen, [the victim] was not credible, [and] the allegations took place outside of the parameters of the Bill of Particulars." Trial counsel testified that he used documents and the testimony of the Petitioner to establish these defenses. Trial counsel testified that he decided not to call Mr. Moon or Officer Smith, despite the fact that they could have been used to highlight inconsistencies in the victim's statements, because they both carried a great risk of presenting very damaging testimony against the Petitioner.

Regarding Mr. Moon, trial counsel testified that while there were some inconsistencies in Mr. Moon's report regarding the allegations made by the victim, there were many consistencies that would bolster the prosecution's case like "the location, what clothes he had on, how he described what happened." Trial counsel further stated that he did not call Mr. Moon because "I didn't want [the jury] to hear one more syllable from any witness's voice that in any way related to [the Petitioner] in any way touching this young man." Trial counsel conceded that Officer Smith's affidavit set out a tighter time line of the alleged offenses than the Bill of Particulars. Trial counsel testified, however, that he

---

[2] Initially, this Court limited the Petitioner's amendments to "any cognizable grounds for relief which may have arisen during the filing of the delayed Rule 11 application." Upon a motion to reconsider by the Petitioner, however, this Court revised the order to allow the Petitioner to amend his petition to include "all potential grounds for relief," in accordance with the Tennessee Supreme Court decision in Frazier v. State, 303 S.W.3d 647 (Tenn. 2010).

decided not to call Officer Smith because the negative testimony that Officer Smith would likely offer during cross-examination "would have been more damaging to [the Petitioner] than the benefit of getting the information about those parameters out." He stated that he based his decision on the fact that Officer Smith's reports had numerous consistent statements that could bolster the prosecution's case, and asserted that he was concerned about presenting the State with another witness to tell the jury about the victim's allegations of abuse.

Trial counsel also testified that he had no memory of discussing with the Petitioner the possibility of calling as witnesses the grandfather of the victim, who was a general sessions court judge, or Larry Webb, a local barber shop owner. Trial counsel recalled that he introduced a note at trial from the victim's grandfather that granted the Petitioner permission to hunt on his property, and opined that the benefit of calling the victim's grandfather to testify about whether the victim and the Petitioner hunted on his property was outweighed by the great risk of putting the grandfather of the victim on the stand. With regard to Mr. Webb, trial counsel stated that he did not "have any recollection of the barber issue being discussed and the barber shop not being open on Sunday."

When questioned about his failure to call an expert witness, trial counsel testified that he may have considered using one for voir dire purposes to gather statistical information about whether the defense should seek a change of venue, but did not recall discussing the use of an expert as a testifying witness.

Trial counsel testified that his decision to not seek a severance of offenses was strategic, reasoning that "if you have cases where there are four or five counts and you feel like the proof is very weak on one or two of those . . . sometimes that weakness bleeds over into the cases that could be a little bit stronger." He also testified that he suggested that the whole preliminary hearing transcript be introduced into evidence to prevent the prosecution from "pick[ing] out every question that was detrimental to [the Petitioner's] case and positive for [the State]." Trial counsel admitted that the transcript was used by the prosecution, but insisted that it was also very helpful to the defense because he was able to use it to cross-examine the victim. Trial counsel conceded that the phone call evidence was very damaging to the Petitioner's case, but testified that "I would rather [the jury] have read what was written than listen to what was said [on the phone recording] in the jury room."

During the direct examination of trial counsel, the Petitioner introduced into evidence a letter to the Petitioner from trial counsel discussing a plea offer that had been made by the State. The letter stated:

This letter will further confirm that your trial date has been set for August 6th and 7th in the Lewis County Circuit Court and that an offer has been made (which I rejected on your behalf) for you to settle the case on attempted aggravated sexual battery with you to serve one year of a three year sentence and being placed on supervised probation.

Trial counsel asserted that this letter simply served as confirmation that he had rejected the State's plea offer as instructed by the Petitioner. Trial counsel adamantly rejected the notion that he turned down the plea offer without discussing it with the Petitioner, and testified that he vividly remembered "discussing that plea the day that the trial started and it was still on the table and [the Petitioner] rejected it that day."

On cross-examination, trial counsel testified that he believed the inconsistencies in the victim's statements to be trivial, and stated that he did not cross examine the victim too harshly with these inconsistencies because "you don't want to come across to the jury as picking on the child . . . I think you lose some of your credibility as an attorney to the jury." He further reiterated his decision not to call Mr. Moon or Officer Smith, stating "I think the advantage gained in pointing out the inconsistencies were outweighed by the potential detriment that would be caused to the defense by either of those particular witnesses being allowed to testify about consistent statements that [the victim] made." In regard to the change of venue issue and voir dire process, trial counsel testified that it was a "team-type decision" to try the case in Lewis County and that jury selection process was also one made by the "team." Trial counsel testified that had the Petitioner indicated that he wanted to strike a particular juror, "I would have gotten rid of them." In regard to his theories of the case, trial counsel testified that he felt like it would be a mistake to argue to the jury that someone else was the perpetrator, "based on what I felt like [the victim] would say and what [the victim] did say . . . that would have totally taken away from any credibility if I had any with the jury."

The Petitioner's appellate counsel also testified. Appellate counsel opined that he would have moved to sever the offenses at trial, but stated that "there are some occasions I've seen where lawyers have thought tactically it was to the advantage not to severe." Appellate counsel also opined that he would have considered a change of venue but stated, "I don't know what the result of the consideration should be necessarily." He stated that the poor reputation of the victim's mother in the community would be a factor weighing against a change of venue. When questioned about the State's statements during voir dire regarding burden of proof and circumstantial evidence, appellate counsel stated, "I don't see anything wrong with that." Similarly, appellate counsel stated that the State's statement during closing argument that the victim's story remained consistent overtime was a proper argument for closing statements because it was a reasonable inference from the evidence. Regarding his

own performance, appellate counsel testified that he believed that he provided the Petitioner with effective assistance of counsel even though he raised only one issue on appeal, and stated "I stand by the decision I made when I wrote the brief."

On cross-examination, appellate counsel explained that in determining what issues to raise in a brief, he studies the record on appeal and picks out one or two strong issues. He stated that he does not like to raise more than three issues because "I don't like to shoot with a shotgun . . . you've got to hit something hard on appeal." He also testified that he sent the Petitioner a copy of the brief, and the Petitioner never indicated that he had any objections to the issues raised on appeal. When questioned about trial counsel's performance at trial, appellate counsel agreed that attorneys can differ as to strategy and that trial counsel's failure to seek severance of the offenses was not ineffective assistance of counsel. He also agreed that in sex abuse cases, defense counsel usually seeks to exclude reports made by the Department of Children's Services and the police because it can be harmful to the defense.

Officer Smith of the Lewis County Sheriff's Department and Mr. Moon of the Department of Children Services also testified. Both witnesses conceded that there were numerous inconsistencies in the victim's statements about the rape allegations. Mr. Moon testified that although there were some inconsistencies, he did not feel like these inconsistencies "would have given us reason to feel like [the victim's] statements weren't credible." He explained that even with discrepancies in the time line, a child's allegations can still be true because children may perceive things differently. He stated that in this case, he did not discredit the allegations made by the victim because "I think that's the way he remembered it," and further explained that "I believe when a child has been traumatized numerous times – and there's been numerous incidents of things that have gone on that it's possible that they were confused."

Tom Isabelle, a detective hired by the Petitioner, testified that he thought trial counsel should have utilized his services more and should have followed up on his investigative suggestions. He testified that he believed that trial counsel should have pursued an alternative theory of the case, particularly the theory of other possible suspects as the perpetrator, stating, "I think it's entirely possible that this boy was telling the truth about what happened, but simply had the wrong fella."

On cross-examination, Mr. Isabelle conceded that he had no evidence to link another suspect to the crime. He admitted that he only interviewed one other potential suspect, and that he gathered no information to suggest that the individual was connected to the abuse. He stated that he did not interview any other potential suspects due to time and money constraints. When asked why he believed that his defense strategy was better than trial counsel's, Mr. Isabelle stated, "[Trial counsel]'s defense did not work."

Larry Webb testified that he owned a local barber shop in town. He stated that he owned the barbershop during the years of 2000 to 2003, the time of the alleged events. He also confirmed that his barber shop has never been open on Sundays.

The victim's mother testified that she knew a couple of the jurors because "I've been here all my life and everybody knows everybody." When asked whether she told the victim what to say during the trial, she stated, "I told [the victim] to tell the truth. I did not tell him what to say."

The Petitioner called several jurors to testify regarding their relationships with the victim's grandfather, a general sessions court judge, and whether there had been any outside influence on the jury's verdict. Juror Troy Walton testified that he was not influenced by the general sessions court judge, and that he "thought [the victim] carried his self (sic) very well [on the stand]." Juror Walton conceded that he received a note from his wife during deliberations, but could not recall the contents of that note. Juror Billy Jackson testified that he considered the general sessions court judge a friend, and that his daughter went to school with the victim's mother. He testified that he had no recollection of a note retrieved by Juror Walton. Juror Johnny Owen testified that he knew of the general sessions court judge, but stated "I have never spoken to him." Juror Burt Moore testified that he also knew of the general sessions court judge, stating "I knew him in general." He further testified that he had no knowledge of Juror Walton receiving a note during the trial. Juror Louie Halfacre testified that he knew of the general sessions court judge because "he's a lawyer in Hohenwald." He stated that he had no recollection of a note being received by anyone during deliberations. The court asked Juror Halfacre whether there was any outside influence on the jury deliberations, to which Juror Halfacre replied, "No." Juror Christopher Dyer testified that "everybody knows [the general sessions court judge] from way back," but stated that his only interaction with the general sessions court judge related to several speeding tickets he received. When asked whether any political influence of the general sessions court judge influenced the jury's decision, Juror Dyer stated, "No, none whatsoever."

Following the post-conviction hearings, the post-conviction court entered an order denying the Petitioner relief. The post-conviction judge specifically held that neither trial counsel nor appellate counsel provided the Petitioner with ineffective counsel. He noted that both attorneys are very experienced and were well-prepared in the Petitioner's case. He also held that regardless of any alleged deficiencies, the Petitioner had failed to prove that either counsel's conduct resulted in prejudice to his defense. Thereafter, the Petitioner filed a timely notice of appeal.

## ANALYSIS

On appeal, the Petitioner raises four issues for our consideration: (1) whether he was denied a full and fair hearing, (2) whether he was denied effective assistance of trial counsel, (3) whether he was denied effective assistance of appellate counsel, and (4) whether the cumulative effects of counsel's errors deprived the Petitioner of a meaningful defense. We begin our review of these issues by acknowledging that post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

**I. Full and Fair Hearing.** The Petitioner first asserts that he was denied a full and fair post-conviction hearing.[3] Specifically, he alleges that the post-conviction court quashed his subpoena for Judge Billy Townsend, the grandfather of the victim, which precluded him from being able to present proof that trial counsel was ineffective for failing to call Judge Townsend. He further asserts that the post-conviction judge abused his discretion in denying the Petitioner's motion to recuse himself, contending that the judge was biased against the Petitioner's case as evidenced by his abrupt tone throughout the hearing and his prior decision denying the Petitioner relief in this case. The State responds that the post-conviction

---

[3]As a separate issue in his brief, the Petitioner also alleges that the post-conviction court abused its discretion by refusing to recuse itself; however, we address them collectively because this claim is essentially a full and fair hearing claim.

-10-

court did not abuse its discretion in quashing the subpoena for the general sessions judge or in refusing to recuse itself. The State contends that the proposed testimony of the general sessions judge was not relevant to the material issues in the case, and that the Petitioner has failed to prove that post-conviction court abused its discretion in denying the motion to recuse. Upon review, we agree with the State.

Due process requires that litigants be given the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). In the post-conviction setting, the Tennessee Supreme Court has held that the "full and fair hearing" requirement is satisfied where "a petitioner is given the opportunity to present proof and argument on the petition for post-conviction relief." House v. State, 911 S.W.2d 705, 714 (Tenn. 1995). While criminal defendants have the constitutional right under both the federal and state constitution to compulsory process for obtaining witnesses in their favor, see U.S. Const. amend. VI; Tenn. Const. art. I, § 9, this right is not unlimited. State v. Smith, 639 S.W.2d 677, 680 (Tenn. Crim. App. 1982). It only extends to "competent, material, and resident witnesses whose expected testimony will be admissible." Bacon v. State, 385 S.W.2d 107, 109 (1964) (citations omitted). Additionally, whether evidence is relevant is a decision left to the discretion of the trial court, and this Court will not will not overturn a trial court's determination regarding relevancy without a showing that the trial court abused its discretion. State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

In the present case, we conclude that the Petitioner was afforded a full and fair hearing in accordance with the requirements of due process and the Post-Conviction Procedure Act. Pursuant to this Court's order, the post-conviction court allowed the Petitioner to raise any potential grounds for relief on remand. He was permitted to proceed pro se, appointed elbow counsel, and allowed to present evidence and argument for three days. Although the post-conviction court quashed his subpoena for the general sessions judge, this Court will not interfere with the post-conviction court's decision absent a showing of abuse of discretion. Id. The Petitioner's stated purpose for calling the general sessions judge was to undermine the credibility of the victim by contradicting his testimony that the Petitioner and the victim had never been hunting together on the property of the general sessions judge. Under the Tennessee Rules of Evidence, relevant evidence may be excluded if its probative value is substantially outweighed by the needless presentation of cumulative evidence. Tenn. R. Evid. 403. The post-conviction court granted subpoenas for Mike Moon of the Department of Child Services and John Smith of the Lewis County Sheriff's Office, both of whom testified about the inconsistencies in the victim's statements. Moreover, in contrast to the testimony of both Mr. Moon and Officer Smith, the general session court judge's proposed testimony did not relate to the allegations of rape of the victim. Therefore, even if this

testimony was relevant, the post-conviction court did not abuse its discretion in excluding it due to its cumulative nature.

In addition, the post-conviction court judge did not abuse his discretion in failing to recuse himself. The Tennessee Supreme Court has stated, "[w]hether a judge should recuse herself or himself from a legal proceeding rests within the sound discretion of the judge." State v. Cannon, 254 S.W.3d 287, 307 (Tenn. 2008) (citations omitted). An objective test is applied to determine if recusal is proper because the appearance of bias is just as injurious to the integrity of the courts as actual bias. Id. Therefore, recusal is warranted (1) if a judge has any doubt concerning his or her ability to preside over a case impartially or neutrally, or (2) when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality. Id. However, adverse rulings are usually insufficient to establish bias. Alley v. State, 882 S.W.2d 810 (Tenn. Crim. App. 1994). This Court will not interfere with the trial court's decision on appeal unless the record clearly shows an abuse of discretion. Cannon, 254 S.W.3d at 307.

Here, the post-conviction judge was assigned to hear the Petitioner's case on remand from the Tennessee Supreme Court, "in the interest of efficient and orderly administration of justice." Subsequently, the judge was sworn under oath in accordance with Tennessee Code Annotated section 17-2-120. The Petitioner filed a motion in opposition to the appointment, which was denied by order after a hearing on the matter.[4] The post-conviction court's order denying relief stated:

> During the course of the hearing on August 4, [the Petitioner] admitted the real reason he wanted this Judge to recuse himself was the fact, that this Court already had ruled against [the Petitioner] on his original Petition for Post-Conviction relief. As such, this Court finds [the Petitioner]'s Motion to Recuse based upon his perception of undue influence by Judge Billy Townsend to be nothing more than a pretext for removing this Judge and any other Judge of this Judicial District. This Court has a duty to follow the directions and orders from the Court of Criminal Appeals. The Court of Criminal Appeals has directed this Court to provide [the Petitioner] a new

---

[4]The transcript from the August 4th hearing was not included in the Record. In accordance with Tennessee Rules of Appellate Procedure 24(b), the appellant bears the burden of preparing an adequate record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis of the appeal. See, e.g., State v. Richardson, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). In the absence of a complete record, this Court must presume the trial court's decision was supported by sufficient evidence. Id.

hearing on his Post-Conviction Relief Petition. At the hearing, this Court has already ruled that [the Petitioner] will be entitled to put on an entirely new case and that it will only consider the proof that is introduced at the new hearing. The Court notes that [the Petitioner] never raised the issue regarding Judge Townsend's undue influence at either the Jury Trial or the initial Post-Conviction Relief hearing. He has only raised it since he became aware that this Judge was appointed by the Supreme Court to hear his case.

Based on this record, the Petitioner has failed to demonstrate actual bias or the appearance of partiality. The fact that the post-conviction judge denied the Petitioner relief at the previous post-conviction hearing in this case does not impact his ability to preside over the subsequent post-conviction hearing and does not prove an abuse of discretion. Likewise, a thorough review of the post-conviction transcripts does not reveal bias or partiality by the judge. He granted the Petitioner, who acted pro se, significant leeway in questioning witnesses and introducing evidence. Furthermore, he explicitly stated during the post-conviction hearings that he would base his decision on the evidence presented at this hearing, and would not be influenced by his prior decision. The Petitioner has failed to show an abuse of discretion or that he was denied a full and fair hearing. Therefore, he is not entitled to relief on this issue.

**II. Ineffective Assistance of Counsel.** The Petitioner next asserts that he was denied effective assistance of trial counsel. The Petitioner specifically alleges that trial counsel was ineffective because he failed to (1) prepare and present a reasonable defense; (2) interview potential witnesses; (3) act as a loyal and zealous advocate; (4) object to or attempt to correct the State's knowing use of false testimony; (5) call an expert witness; (6) seek a change of venue; (7) seek a severance of the counts and allow a fatal variance at the close of the State's case-in-chief; (8) allow Petitioner the opportunity to reject a plea offer by the State; (9) protect the Petitioner's Confrontation Clause rights; and (10) seek to exclude the telephone conversation recorded by Detective Barry Carrol. In response, the State contends that the Petitioner has failed to prove that counsel's performance was deficient and prejudicial, and as such, the post-conviction court properly denied the Petitioner relief. We agree with the State.

In Vaughn, the Tennessee Supreme Court repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and articl I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation

encompasses the right to reasonably effective assistance, that is, within the rage of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065. The Tennessee Supreme Court has reiterated:

"Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel's strategy will vary even among the most skilled lawyers. When that judgment exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel."

Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982) (quoting Robinson v. United States, 448 F.2d 1255 at 1256 (8th Cir. 1971)).

-14-

**(1) Failure to prepare and present reasonable defense.** To support his ineffective assistance of counsel claim, the Petitioner first asserts that trial counsel was ineffective for failing to prepare and present a reasonable defense. He asserts that counsel failed to present an alibi defense and should have presented other defense theories, specifically, a theory of alternative suspects. In his brief, the Petitioner attempts to compare his case to State v. Zimmerman, 823 S.W.2d 220 (Tenn. Crim. App. 1991) where defense counsel's failure to present any evidence satisfied the Strickland standard for ineffective assistance of counsel. In that case, defense counsel did not call any witnesses, advised the defendant not to testify, and failed to put into evidence routine and favorable items, such as a 911 phone call made by the defendant, to establish self-defense or allow the jury to consider a lesser degree of homicide. This Court determined that the failures by defense counsel, taken together, amounted to ineffective assistance of counsel, reasoning that the errors deprived the defendant of a "meaningful defense." Id. at 228.

Upon review of the record, we cannot agree that the Petitioner was deprived of a meaningful defense. Indeed, counsel has a duty to investigate, conduct adequate legal research, and determine what defenses can be developed so as to hold the State to its burden of proof. See Baxter, 523 S.W.2d at 932-33. Decisions regarding proper preparation and investigation are assessed for reasonableness; however, courts should apply "a heavy measure of deference to counsel's judgments." State v. Burns, 6 S.W.2d 453, 562 (Tenn. Crim. App. 1999) (quoting Strickland, 466 U.S. at 691).

Here, the post-conviction court concluded, and the record confirms, that the Petitioner's trial counsel was adequately prepared for trial and presented a reasonable defense. The post-conviction court noted that trial counsel conducted extensive pre-trial discovery, filed many pre-trial motions, and communicated with the Petitioner on at least twenty occasions. Trial counsel testified that he attempted to establish several defense theories, specifically that the alleged offenses did not happen and that the victim was not credible. The mere fact that these defenses were unsuccessful does not satisfy the Strickland standard.

The Petitioner asserts in particular that trial counsel should have presented a defense theory of alternative suspects, relying on the testimony of his investigator, Tom Isabelle. Mr. Isabelle testified that he believed that the victim could have simply "pointed to the wrong [man]," and was very critical of trial counsel for not pursuing such a defense. During cross-examination, Mr. Isabelle conceded that he had no evidence to link any other suspects to the crime and only reasoned that his defense theory was better than the ones presented by trial counsel because trial counsel's "defense did not work." On the other hand, trial counsel testified that he believed it would be a mistake to argue alternative suspects to the jury based on the evidence. The post-conviction court found Mr. Isabelle's testimony to be unreliable

and instead credited the testimony of trial counsel, which is a decision properly made by the post-conviction court. See Vaughn, 202 S.W.3d at 115. We cannot conclude that the evidence preponderates against the post-conviction court's decision, and thus, we likewise credit the testimony of trial counsel. Based on his testimony, the decisions regarding which defenses to present to the jury was strategic based upon his preparation for the case. As such, his decisions cannot be second-guessed using hindsight. Furthermore, given that the Petitioner did not put forth any evidence to link another suspect to the crime, the Petitioner has failed to prove the prejudice prong of Strickland by showing that there is a reasonable probability that the outcome of his trial would have been different had the theory of alternative suspects been presented.

**(2) Failure to interview and call witnesses**. The Petitioner is particularly critical of trial counsel's failure to call Mr. Moon, Officer Smith, and Larry Webb as witnesses during his trial. The Petitioner asserts that these witnesses could have been used to undermine the credibility of the victim by exposing inconsistencies in the victim's testimony. To prevail on an ineffective assistance of counsel claim based upon counsel's failure to call a witness at trial, the Petitioner must present that witness at the post-conviction hearing. Black v. State, 749 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The post-conviction court must then determine whether that witness's testimony "would have been (1) admissible, and (2) material to the defense." Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008). Even if the testimony is admissible, trial counsel is not deficient for failing to call that witness if it would not have "materially aided the petitioner's defense." Id.

Here, although the testimony was admissible, the Petitioner has failed to prove that the testimony would have materially aided his defense such to support a claim of ineffective assistance of counsel. During the post-conviction hearings, trial counsel testified that Mr. Moon and Officer Smith could have been used to point out inconsistencies in the victim's statements; however, they carried a greater risk of presenting very damaging testimony against the Petitioner. Indeed, during the post-conviction hearings Mr. Moon testified that despite the inconsistencies, he believed the victim to be credible, noting that a child's perception of events is often distorted and may have discrepancies in the time line. Moreover, calling either witness would open the door to allow the State to highlight the consistencies in the victim's allegations and rehash the details of the alleged rapes, which greatly outweighed the benefit of the proffered testimony. Regarding Larry Webb, the owner of a local barber shop, the Petitioner has likewise failed to prove that his testimony would have materially aided his defense. Although Mr. Webb testified that his barber shop is not open on Sundays, the Petitioner provided no evidence to prove that Ms. Townsend took the victim to that particular barber shop during the time in question, such that it is reasonably probable that his testimony would have resulted in a different outcome at trial.

**(3) Failure to act as a loyal and zealous advocate.** The Petitioner next asserts that trial counsel failed to act as a loyal and zealous advocate, pointing to trial counsel's decision to introduce into evidence the transcripts of the preliminary hearing and phone call with Ms. Townsend. In Hellard v. State, 629 S.W.2d 4, 9-10 (Tenn. 1982), the Tennessee Supreme Court stated that competent representation does not mean perfect representation, reasoning:

> It cannot be said that incompetent representation has occurred merely because other lawyers, judging from hindsight, could have made a better choice of tactics . . . [W]e know that a criminal trial is a very dramatic, vibrant and tense contest involving many variables and that counsel must make quick and difficult decision respecting strategy and tactics which appear proper at the time but which, later, may appear to others, or even to the trial lawyer himself, to have been ill-considered.

Of course, uninformed decisions made because of inadequate preparation can support of finding of ineffective assistance of counsel, but absent such a showing this Court will "not sit to second guess strategic and tactical choices made by trial counsel." Id. at 9 (citing United States v. DeCoster, 487 F.2d 1197, 1201 (D.C. Cir. 1973)).

In the present case, the Petitioner relies on hindsight to attack the decisions made by trial counsel. Trial counsel testified that the decision to introduce both transcripts into evidence was strategic in nature, and that he based his decision upon his experience as a defense attorney and the evidence presented at trial. He stated that he used the preliminary hearing transcript to discover as much as possible about the victim's testimony and to effectively cross-examine the victim. He stated that he introduced it into evidence to prevent the State from picking out only the testimony that was detrimental to the Petitioner's case. Regarding the phone call evidence, trial counsel testified that he believed it would be more beneficial to have the jury read the transcript rather than listen to the recording itself. Both of these decisions were strategic in nature, designed to reduce the impact of the State's evidence. Viewed in hindsight, these decisions may have been ill-considered; however, based on the record, we cannot conclude that the decisions were uninformed due to a lack of adequate preparation. They cannot support a claim of ineffective assistance of counsel.

**(4) Failure to present expert testimony**. Petitioner next asserts that trial counsel was ineffective for failing to present expert testimony to rebut the testimony of the State's expert witness, Nurse Rosof-Williams, and to critique the interviewing techniques of Mr. Moon and Officer Smith. A claim of ineffective assistance of counsel based upon a failure to present evidence requires proof of what that evidence would have been. Brimmer v. State, 29 S.W.3d 497, 512 (Tenn. Crim. App. 1998) (citing Davis v. State, 912 S.W.2d 689, 698 (Tenn. 1995)). Neither the post-conviction court nor this Court, can speculate "as to what

the [expert] evidence would have shown and . . . how it would have benefitted the petitioner." Brimmer, 29 S.W.3d at 512 (internal citations removed). We are mindful that the Petitioner was not provided funds to hire an expert witness during the post-conviction hearings, see Davis, 912 S.W.2d at 696-97 (holding that the state is not required to provide expert assistance in non-capital post-conviction cases); however, the Petitioner must still provide some evidence as to what testimony could have been presented and how it would have aided his defense. See Brimmer, 29 S.W.3d at 512.

Here, no such evidence appears in the record. In rejecting the Petitioner's claims, the post-conviction court highlighted two significant points. First, it noted that the Petitioner put forth no evidence of any expert who could have been used to rebut the State's witness or critique the techniques of Mr. Moon and Officer Smith. Additionally, the court noted that Mr. Moon and Officer Smith did not testify in the case, and therefore, failure to present an expert to critique their techniques was not prejudicial to the Petitioner's case. We agree with the post-conviction court's reasoning. The Petitioner's bare reference to a law review article indicating the expert testimony is almost always helpful to the defense is not enough to support a finding of ineffective assistance of counsel. Although the Petitioner was not provided funds to hire an expert witness, the Petitioner should have presented some evidence of what the testimony would have been and how it would have aided his defense. In the absence of such evidence, relief cannot be granted.

**(5) Failure to object to the use of false testimony**. The Petitioner asserts that trial counsel was ineffective for failing to object to instances of prosecutorial misconduct during the trial. In support of this claim, the Petitioner points to the Prosecutor's statement during voir dire that the Petitioner had to do more than just testify "I didn't do it" in order to supply reasonable doubt. Next, he points to the Prosecutor's reference during his closing argument to the Petitioner's apology during the phone call with the victim's mother where the Prosecutor stated, "I submit to you he's sorry because he is apologizing for the confession that he had given [the victim's mother] about [the victim]." Finally, the Petitioner asserts that the Prosecutor knowingly used false testimony by pointing to a number of inconsistencies in the victim's testimony.

When considering prosecutorial misconduct as a basis for ineffective counsel, the first step in the analysis is a determination of whether prosecutorial misconduct occurred. McCormick v. State, No. 03C01-9802-CR-00052, 1999 WL 394935, at *18 (Tenn. Crim. App. June 17, 1999) (citing State v. Pulliam, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996)). The Tennessee Supreme Court has noted that "[c]losing argument is a valuable privilege that should not be unduly restricted." State v. Stephenson, 195 S.W.3d 574, 603 (Tenn. 2006) (citing State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001)). The trial court has substantial discretion in controlling the course of arguments and will not be reversed unless there is an

abuse of that discretion. Id. In addition, prosecutorial misconduct does not constitute reversible error absent a showing that it has affected the outcome of the trial in a manner prejudicial to the defendant. Id. (citing Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001)). An attorney's comments during closing argument "'must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried.'" State v. Gann, 251 S.W.3d 446, 459 (Tenn. Crim. App. 2007) (quoting State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978)). However, in order to be entitled to relief on appeal, the defendant must "show that the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996). After a finding of prejudicial misconduct, the reviewing court must then determine whether the failure to object to the conduct deprived the defendant of effective assistance of counsel. McCormick,1999 WL 394935, at *18 (citing Coker v State, 911 S.W.2 357, 371(Tenn. Crim. App. 1995), superseded on other grounds by rule, Tenn. Sup. Ct. R. 28, § 3(B) as recognized in State v. West, 19 S.W.3d 753 (Tenn. 2000)).

In the present case, we need not consider whether counsel was ineffective for failing to object because the Petitioner has failed to prove that prosecutorial misconduct occurred. The post-conviction court considered the comments made by the prosecutor during voir dire and trial and determined that these comments did not amount to prosecutorial misconduct. Specifically, the court determined that the prosecutor's remarks during his closing argument are properly construed as "argument" as the comment was a reasonable inference drawn from the evidence. In fact, the court noted that the victim's mother testified that the Petitioner apologized to her for the acts that the Petitioner had done to the victim. The court also determined that the comments made during voir dire were not improper. Based on a review of the record, the evidence does not preponderate against these findings.

Likewise, the inconsistencies in the victim's testimony do not give rise to a prosecutorial misconduct claim. Although the state has an affirmative duty to correct false testimony, State v. Spurlock, 874, S.W.2d 602, 617 (Tenn. Crim. App. 1993), this Court has noted that "[i]nconsistencies in testimony do not always equate with perjury." State v. Elkins, No. E2001-01245-CCA-R3CD, 2002 WL 464799, at *7 (Tenn. Crim. App. Mar. 27, 2002). Indeed, "inconsistencies or inaccuracies may make the witness a less credible witness, [but] the jury's verdict will not be disturbed unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the [petitioner]'s guilt." State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). In the present case, we cannot conclude that the inconsistencies in the victim's testimony rise to the level of false testimony or that they create a reasonable doubt as to the Petitioner's guilt. The victim was cross-examined and the jury resolved the inconsistencies within his testimony

with their verdict. As such, this claim cannot support a finding of ineffective assistance of counsel.

**(6) Failure to seek a change in venue**. The Petitioner next asserts that trial counsel was ineffective for failing to request a change in venue. The Petitioner argues that he was unable to receive a fair trial before an impartial jury because of the great influence of Judge Townsend due to his relationship with the victim and numerous jurors. The Petitioner asserts in his brief that he urged trial counsel to seek a change of venue and was prejudiced by counsel's failure to do so.

A change in venue can be granted upon a showing of undue excitement or any other cause that is likely to result in an unfair trial. See Tenn R. Crim. P. 21. However, the failure to seek a change in venue will not establish ineffective assistance of counsel absent a showing of prejudice. Adkins v. State, 911 S.W.2d. 334, 337 (Tenn. Crim. App. 1994). Likewise, "allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991).

Here, as noted by the post-conviction court, there were conflicting factors regarding a change in venue. On the one hand, the victim is the grandson of a well-known, local general sessions judge. On the other hand, and weighing against a change in venue, the victim's mother had a poor reputation, which would likely cut against her credibility. Additionally, the consideration that the case may be moved to Williamson County, where trial counsel believed there was a much higher rate of conviction for this type of offense than in Lewis County, also weighed against a change in venue. Moreover, trial counsel testified that the decision to not seek a change in venue was a "team decision," made along with the Petitioner after considering the various factors. Based upon these factors and the testimony presented at the post-conviction hearing, the post-conviction court found this decision to be a strategic. The evidence does not preponderate against the post-conviction court's finding, and as such, the Petitioner cannot attack "a sound, but unsuccessful, tactical decision made during the course of the proceedings." Adkins, 911 S.W.2d at 347 (citing State v. Martin, 627 S.W.2d 139, 142 (Tenn. Crim. Appl. 1981)). In any event, the Petitioner did not prove that the failure to seek a change of venue was prejudicial to his defense because the testimony of the jurors at the post-conviction hearing does not reveal any improper or extraneous influence over the jury's decision.

**(7) Failure to seek a severance of the offenses**. The Petitioner also asserts that trial counsel was ineffective for failing to move for a severance of the offenses. Under Rule 14 of the Tennessee Rules of Criminal Procedure, a defendant is entitled to seek a severance of offenses unless the offenses are part of a "common scheme or plan and the evidence of one

would be admissible in the trial of others." Tenn R. Crim. P. 14(b)(1). Nevertheless, within the context of ineffective assistance of counsel, the Petitioner must prove that the decision to not seek a severance of offenses fell outside of the range of competence demanded of criminal attorneys. See, e.g., Carroll v. State, No. M2002-00797-CCA-R3-PC, 2003 WL 21653883 (Tenn. Crim. App. July 11, 2003), perm. app. denied (Tenn. December 29, 2003) (rejecting petitioner's claims of ineffective assistance of counsel for failure to seek a severance of offenses because the evidence did not preponderate against the post-conviction court's finding that counsel's decision was tactical); State v. Pottebaum, No. M2012-01573-CCA-R3-PC, 2013 WL 3198132 (Tenn. Crim. App. June 21, 2013) (rejecting petitioner's claim of ineffective assistance of counsel for failure to seek a severance of the offenses because it was a tactical decision, despite evidence that the motion likely would have been granted, and noting "the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance.").

The post-conviction court credited trial counsel's decision as strategic based upon the testimony presented at the post-conviction hearing, and the record supports this decision. The post-conviction court concluded that trial counsel adequately prepared and investigated the case, and filed many pretrial motions in this case based on that preparation. In support of his decision, trial counsel testified that in his opinion, not severing offenses can be helpful to the defense, especially if there is weakness in one or two of the offenses because that weakness can "bleed into the other offenses." The Petitioner relies heavily on the testimony of appellate counsel who testified that he would have moved to sever the offenses; however, appellate counsel also testified that reasonable defense attorneys could have differing opinions about whether to sever in this case, and stated that he did not believe it to be ineffective assistance of counsel to not seek a severance here. The Petitioner has failed to prove that trial counsel's decision regarding severance was not a sound tactical decision based upon reasonable investigation.

**(8) Failure to allow the Petitioner to consider a plea offer**. The Petitioner asserts that trial counsel was ineffective for failing to present the State's plea offer to him before rejecting the offer. To support his claim, the Petitioner introduced into evidence a letter from trial counsel that confirmed "an offer has been made (which I rejected on your behalf) for you to settle the case on attempted aggravated sexual battery with you to serve one year of a three year sentence and being placed on supervised probation." Trial counsel testified that he discussed the plea offer with the Petitioner and rejected the plea offer only upon the direction from the Petitioner. He stated that the letter served as a confirmation of those events.

While failure to communicate a plea offer to a defendant certainly provides grounds for ineffective assistance of counsel, see, e.g., Harris v. State, 875 S.W.2d 662, 665 (Tenn.

1994), the Petitioner bears the burden of proving "factual allegations in the petition for post-conviction relief by clear and convincing evidence." Vaughn, 202 S.W.3d at 115 (citing T.C.A. § 40-30-110(f)). Inconsistencies in the evidence are properly resolved by the post-conviction court and will not be overturned absent a showing that the evidence preponderates otherwise. Id.

Here, the post-conviction court credited trial counsel's testimony that the letter only served as a confirmation that the plea offer was communicated to the Petitioner and rejected upon direction from the Petitioner. The Petitioner did not testify or offer any contradicting evidence to establish that trial counsel did not present the plea offer to the Petitioner. Consequently, the Petitioner has failed to satisfy his burden of proof on this matter. The record does not preponderate against the post-conviction court's finding.

**(9) Failure to protect the Petitioner's Confrontation Clause rights**. The Petitioner also claims that trial counsel was ineffective for failing to object to introduction of a report made by Phyllis Thomson, a social worker at "Our Kids Center." The report was introduced through the testimony of Julie Elizabeth Rosof-Williams, a nurse clinician, and included in the medical history and interview notes made by Ms. Thompson.[5]

A key aspect to ineffective assistance of counsel is proof that "counsel's acts or omissions were so serious that they fell below an objective standard of reasonableness under prevailing professional norms." Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002). It is crucial that a reviewing court evaluate counsel's conduct from counsel's perspective *at the time*. Wilcoxson v. State, 22 S.W.3d 289, 303 (Tenn. Crim. App. 1999) (citing Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997)). As discussed, the petitioner bears the burden of proof on an ineffective assistance of counsel claim, and failure to prove either prong of Strickland is fatal to petitioner's claim. Wilicoxson, 22 S.W.3d at 303.

In the present case, the Petitioner has failed to put forth sufficient evidence that trial counsel's conduct fell below an objective standard of reasonableness based on prevailing norms at the time. As the post-conviction court noted, the report itself was admissible as an exception to the hearsay rule, under Tennessee Rules of Evidence 803(4) and 803(6). We need not determine whether admission of the report violated the Petitioner's Confrontation Clause rights because the cases upon which the Petitioner bases his claim of ineffective assistance of counsel were decided *after* the Petitioner's trial. Viewing trial counsel's conduct at the time of trial, we cannot say that his conduct fell below an objective standard of reasonableness. Moreover, the post-conviction court concluded that neither Nurse Rosof-

---

[5]The Report was not included in the Record. The information we have about the report we glean from the post-conviction court's decision.

William's testimony nor the report were very damaging to the Petitioner, as the report only makes one reference to the Petitioner. As such, even if trial counsel's conduct fell below an objective standard of reasonableness, the Petitioner has failed to prove that this conduct was prejudicial to his case.

**(10) Failure to seek to exclude the telephone call evidence**. Finally, the Petitioner asserts that trial counsel was ineffective by not seeking to exclude the telephone conversation between the Petitioner and the victim's mother. The Petitioner alleges that the recording violated his Fifth Amendment rights against self-incrimination and should have been excluded. As such, Petitioner claims that trial counsel's failure seek an exclusion of the statements amounted to ineffective assistance of counsel.

The Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Similarly, the Tennessee Constitution states "that in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. Under the Fifth Amendment, a confession is involuntary when it is the result of coercive action on the part of the State. Colorado v. Connelly, 479 U.S. 157, 163-64 (1986). "The test of voluntariness for confessions under article I, § 9 of the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment." State v. Smith, 933 S.W.2d 450, 455 (Tenn. 1996) (citing State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994); State v. Smith, 834 S.W.2d 915, 918-19 (Tenn. 1992)). In order for a confession to be considered voluntary in Tennessee, it must not be the result of "'any sort of threats or violence, . . . any direct or implied promises, however slight, nor by the exertion of any improper influence.'" State v. Smith, 42 S.W.3d 101, 109 (Tenn. Crim. App. 2000) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)). In determining the voluntariness of a statement, the trial court must look at the totality of the circumstances and decide if "'the behavior of the state's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined.'" State v. Kelly, 603 S.W.2d 726, 728 (Tenn. 1980) (quoting Rogers v. Richmond, 365 U.S. 534, 544 (1961)).

In the present case, the Petitioner was not in custody for purposes of Miranda, and therefore, the failure to advise Petitioner of his rights under the Fifth Amendment did not violate his constitutional rights. Miranda v. Arizona, 384 U.S. 436, 478 (1966); State v. Smith, 933 S.W.2d 450, 454 (Tenn. 1996). However, even where Miranda is inapplicable, the statements cannot be the result of coercive state action. In order to prevail on his claim of ineffective assistance of counsel, the Petitioner must put forth evidence to prove both that Ms. Townsend was acting as a State agent and that his statements were the product of such coercion that they constitute a violation of his Fifth Amendment rights. The Petitioner has

failed to present such evidence, either in his petition or through testimony and presentation of evidence during the post-conviction hearings. The Petitioner did not introduce the tape recording of the phone conversation or a transcript of the recording into evidence during the post-conviction hearing. Further, he did not elicit testimony from any witnesses regarding the issue. As such, this Court cannot conclude that the confessions were a result of state coercion. Consequently, the Petitioner has failed to prove that trial counsel's failure to seek exclusion of this evidence was deficient.

**III. Ineffective Assistance of Appellate Counsel.** The Petitioner asserts that appellate counsel was ineffective for raising only one issue on direct appeal, effectively waiving all other issues. The State responds that the decision to raise only one issue on appeal was a matter of strategy not to be second guessed by hindsight, and in any event, the Petitioner failed to prove that the omitted issues possessed any merit in order to prove that counsel's conduct was prejudicial to the defense. We agree with the State.

Ineffective assistance of appellate counsel is evaluated by applying the same Strickland standard that applies to claims of ineffective assistance of trial counsel. Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004). The Petitioner bears the burden to prove both prongs of the Strickland test: (1) that counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Id. Appellate counsel is not constitutionally required to raise every conceivable issue on appeal, and indeed, the seasoned advocates often "emphasize[] the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993) (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983)). The determination of which issues to present on appeal generally lies within the discretion of appellate counsel and is afforded great deference upon review so long as it falls within the range of competence required of attorneys. Carpenter, 126 S.W.3d at 886. Moreover, such a decision is often most appropriately characterized as a strategic decision, which will not be second-guessed with hindsight. Campbell v. State, 904 S.W.2d 594, 597 (Tenn. 1995).

When an ineffective assistance of appellate counsel claim is based upon omission of an issue on appeal, it is necessary to consider the merit of the issue. Carpenter, 126 S.W.3d at 887. In Carpenter, the Tennessee Supreme Court adopted a non-exhaustive list of factors used by the Sixth Circuit in evaluating counsel's performance regarding the omission:

1) Were the omitted issues "significant and obvious"?
2) Was there arguably contrary authority on the omitted issues?
3) Were the omitted issues clearly stronger than those presented?
4) Were the omitted issues objected to at trial?
5) Were the trial court's rulings subject to deference on appeal?

6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7) What was appellate counsel's level of experience and expertise?

8) Did the petitioner and appellate counsel meet and go over possible issues?

9) Is there evidence that counsel reviewed the all the facts?

10) Were the omitted issues dealt with in other assignments of error?

11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Carpenter, 126 S.W.3d at 888 (citing Mopes v. Coyle, 171 F.3d 408, 427 (6th Cir. 1999)).

In the present case, the Petitioner asserts that appellate counsel should have raised all of the issues raised in the motion for a new trial, which included sufficiency of the evidence, admission of the Our Kid's Center report, truthfulness of jurors during voir dire, influence by Judge Townsend, improper contact between the jury and other persons, and election of offenses. Although appellate counsel testified that he considered several of these issues, he ultimately determined to raise just one issue on appeal, the election of offenses. He testified he does not like to use the "shotgun approach" on appeal, and stated that he prefers to focus the reviewing court's attention on the strongest issue or issues.

Considering the factors outline above, we cannot conclude that appellate counsel's performance was deficient. Appellate counsel made the decision about which issue to raise after reviewing the trial record and meeting with the Petitioner. He testified that the decision to raise only one issue was strategic, and opined about the weakness of several of the other issues initially considered. As noted by the post-conviction court, the issue raised by appellate counsel was strong as evidenced by the discussion of the issue by this Court on direct appeal. Appellate counsel sent the Petitioner a copy of the brief, and the Petitioner did not object to appellate counsel's approach, nor suggest any other issues that should have been raised. Moreover, the Petitioner has failed to prove that the other issues he now claims should have been raised would have been any more successful on appeal. The post-conviction court determined that appellate counsel's performance was not deficient, nor was the Petitioner prejudiced by counsel's decision to raise one issue on appeal. Upon review of the record, the evidence does not preponderate against this conclusion. Therefore, the Petitioner is not entitled to relief.

**IV. Cumulative Effect.** The final issue raised by the Petitioner is that the cumulative effect of the errors raised on appeal rendered the trial unfair and deprived the Petitioner of a meaningful defense. The State responds that the post-conviction court properly addressed each individual error and stated its reasoning for denying relief in detail. The State contends

that because the Petitioner has failed to prove any single error, he cannot prove that the cumulative errors deprived him of a fair defense. We agree with the State.

The cumulative error doctrine recognizes that in some cases there may be multiple errors committed during the trial proceedings, which standing alone constitute harmless error; however, considered in the aggregate, these errors undermined the fairness of the trial and require a reversal. State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010). However, the cumulative error doctrine properly applies only where there has been more than one *actual error*. Id.; See also, Leonard v. State, No. M2006-0654-CCA-R3-PC, 2007 WL 1946662, at *21 (Tenn. Crim. App. Sept. 13, 2007) ("[A] Petitioner who has failed to show that he received constitutionally deficient representation on any single issue may not successfully claim that his constitutional right to counsel was violated by the cumulative effect of such counsel's errors."). Because the Petitioner has failed to prove deficient representation on any issue, he cannot successfully claim that the cumulative effect of counsel's performance violated his constitutional rights. The Petitioner is not entitled to relief.

## CONCLUSION

Based upon our review of the record, we affirm the decision of the post-conviction court.

_____

CAMILLE R. McMULLEN, JUDGE